## QUARTEMAS et al. *vs.* THE STATE.

[PROSECUTION ON STATEMENT SIGNED BY SOLICITOR FOR LIVING IN ADULTERY.]

*Living in adultery; what acts do not constitute, within meaning of Code.*—On the trial of a charge for living together in adultery or fornication, if the evidence tends to show that the accused parties lived at different places, it is an error in the court to refuse to charge the jury, at the request of the defendants, that if the jury believe, from the evidence, that the man lived in the jail and the woman at another place, and that they did not live together in adultery or fornication, they should acquit the defendants ; and that before the defendants or either of them could be convicted the evidence must satisfy their minds beyond a reasonable doubt, that the defendants "did more than occasional acts of illicit or criminal intimacy."

APPEAL from the Circuit Court of Dallas.
Tried before Hon. M. J. SAFFOLD.

This was a prosecution against the appellants for living together in adultery or fornication, commenced before the criminal court of Dallas county, and resulting in their conviction. The defendants appealed to the circuit court. In the circuit court there was a jury trial, on a statement signed by the solicitor, and the parties were again convicted. From the bill of exceptions it appears that Quartemas was jailor, and lived and slept in the jail, and the woman, Jackson, lived outside, but how far from the jail is not stated in the bill of exceptions.

The first witness for the State testified that he saw the woman Jackson, and the defendant Quartemas lying in the same bed in the day time, in the jail, and he once saw Quartemas with his arms around her. This witness "turned the woman in Quartemas' room several nights, and turned her out again, and once saw her undressing in his room." Two other witnesses testified that "they saw defendant Quartemas come out of Bender's gate, at good light, at which place Polly Jackson lived, and that she followed him to the gate and looked after him." Another witness for the State testified that she saw the woman Jackson once in Quartemas' room, and saw her three times in jail.

There was some other testimony, going to show that the defendants had once or twice been seen walking together after night, and that the woman Jackson had been seen to jump from the jail window; that on one occasion Quartemas had been seen to throw the key down to her to let her out the gate, and that the woman had been seen to go out five or six mornings.

The defense introduced some testimony of a negative character, to the effect that defendant's witnesses were about the jail, and had ample opportunity to observe the conduct of the defendants, and did not see the conduct testified to by the State's witnesses, and also proved that the character of two of the State's witnesses for truth and veracity was bad.

There were several exceptions reserved to the rulings of

the court below, which need not be further noticed. The defendants, among other written charges asked, requested the following, which the court refused to give, and the defendants duly excepted, to-wit: "If the jury believe, from the evidence, that the defendant Quartemas lived in the jail, and the defendant Jackson lived in her own dwelling, and that they did not live together in adultery or fornication, they should acquit the defendants, and that before they or either of them can be convicted the evidence must satisfy the minds of the jury, beyond a reasonable doubt, that the defendants did more than one occasional act of illicit or criminal intimacy."

G. W. GAYLE, for appellants.—The court erred in refusing the first charge asked. The ruling in *Collins v. The State*, (14 Ala. 608,) is about as far as the statute can be stretched, and even that case does not support the refusal to give the charge asked. There must be a *living togther*, something continuous enough to attract attention and corrupt morals.

JNO. W. A. SANFORD, Attorney-General, *contra*.

PECK, C. J.—I have examined the record and bill of exceptions in this case, and find but one available error, and that consists in the refusal of the court to give the first charge asked by the defendants. Taken in connection with the evidence, this charge should have been given. Occasional acts of criminal intimacy do not make out the offense named in the statute.—*Collins v. The State*, 14 Ala. 608. The parties accused must live together in adultery or fornication, or at least the conduct of the parties must be of such a character as to become, openly, an evil example—an outrage upon decency and morality. In the case of *Collins v. The State, supra*, it is decided that a married man who visits and remains with his paramour one night in every week, and sometimes oftener, for seven months, at her residence, but half a mile from his own house, is guilty

of living in adultery within the meaning of the statute. This is going quite as far as any reasonable interpretation of the words of the statute will permit.

Let the judgment be reversed, and the cause remanded for another trial.